IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD

JOE HAND PROMOTIONS, INC.,

    Plaintiff,

v.　　　　　　　　　　　　　　　　CIVIL ACTION NO. 1:24-00108

GRILLIARDS INC.
D/B/A SONNY'S BILLIARDS
AND BISTRO,
JONATHAN L. BROCKMAN, and
ROBERT PAITSEL,

    Defendants.

### MEMORANDUM OPINION AND ORDER

Pending before the court is plaintiff Joe Hand Promotions, Inc.'s ("JHP") motion for default judgment. See ECF No. 17. For the reasons explained below, the motion is **GRANTED**.

### I.   Facts and Background

JHP possessed the exclusive rights to distribute to businesses the pay-per-view broadcast of *Ultimate Fighting Championship 259: Blachowicz vs. Adesanya* ("UFC 259"), which aired on March 6, 2021. See Compl. at ¶ 3, ECF No. 1. Businesses that wanted to show the event had to pay JHP a licensing fee. See id. at ¶ 10.

On March 5, 2024, JHP filed this suit against defendants claiming that they pirated UFC 259 and unlawfully aired it in Sonny's Billiards and Bistro, a sports bar owned and operated by defendants in Princeton, West Virginia. See id. at ¶¶ 4, 13.

JHP claims this violated 47 U.S.C. § 605 or, in the alternative, 47 U.S.C. § 553.  See id. at ¶¶ 21-22.

Defendants did not respond to the complaint, and default was entered against them.  See Clerk's Entry of Default, ECF No. 12.  JHP now moves for default judgment.

JHP attaches to its motion for default judgment a sworn declaration of JHP's president, Joseph Hand III.  See ECF No. 17-2.  He says that piracy has eroded JHP's sales and that the company has retained "auditors" to identify suspected "signal pirates," visit their businesses, and catch them unlawfully showing pirated events.  See id. at ¶¶ 4-6.  He says that Sonny's Billiards and Bistro advertised on its Facebook page that it would show UFC 259, as well as prior UFC events for which it did not purchase a license.  See id. at ¶ 15.  He contends that on the night UFC 259 aired, private investigator J.P. Stevens visited Sonny's Billiards and Bistro, paid a five-dollar cover charge to enter, and observed the event being displayed to approximately fifty-two patrons.  See id. ¶ 14.  Mr. Hand asks the court to impose significant monetary damages to deter other signal pirates.  See id. ¶¶ 19-20.

JHP also attaches to its motion a "rate card" that it uses to bill customers based on the fire-code occupancy of the customers' businesses.  See ECF No. 17-2 at 22.  The private investigator, J.P. Stevens, provided an affidavit, in which he

2

testifies that he counted fifty-two patrons when he visited Sonny's Billiards and Bistro, and he estimated the maximum occupancy of the building to be 100 people. See id. at 24. According to the rate card, UFC 259 would have cost $1,095 for a building with a fire-code occupancy of 100 people. See id. at 22.

JHP seeks (1) statutory damages of $12,000, (2) attorney fees of $1,500, (3) litigation costs of $660, and (4) to hold individual defendants Jonathan L. Brockman and Robert Paitsel personally liable for the damages, in addition to Grilliards Inc. See Mem. Supp. Mot. for Default J. at 13-16, ECF No. 18.

## II. Legal Standard

Federal Rule of Civil Procedure 55(a) provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). The court may enter default judgment at the plaintiff's request and with notice to the defaulting party. Fed. R. Civ. P. 55(b)(2). While the United States Court of Appeals for the Fourth Circuit maintains a "strong policy that cases be decided on their merits," United States v. Shaffer Equip. Co., 11 F.3d 450, 453 (4th Cir. 1993), default judgment may be appropriate where a party is

unresponsive, S.E.C. v. Lawbaugh, 359 F. Supp. 2d 418, 421 (D. Md. 2005).

When considering a motion for default judgment, the court accepts as true all well-pleaded factual allegations, other than those pertaining to damages. See id. at 422. If the complaint establishes liability, the court must determine the appropriate damages. See Joe Hand Promotions, Inc. v. Adilio, No. 8:23-cv-00712-PX, 2024 WL 2977869, at *2 (D. Md. June 13, 2024). Damages are circumscribed by the complaint's request for relief, and the damages request must have evidentiary support. See id. (citing Fed. R. Civ. P. 54(c); Monge v. Portofino Ristorante, 751 F. Supp. 2d 789, 794-95 (D. Md. 2010)).

Under this framework, there are two components to the analysis: liability and damages.

### III. Discussion

#### A. Liability

JHP seeks to recover under Section 605 of the Communications Act, which provides that "[n]o person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person." 47 U.S.C. § 605(a). This statute has been extended to include "the unauthorized interception or receipt of 'digital satellite television transmissions.'" See J & J Sports

4

Prods., Inc. v. Beer 4 U, Inc., No. TDC-18-2602, 2019 WL 5864499, at *3 (D. Md. Nov. 8, 2019) (quoting J & J Sports Prods., Inc. v. Mayreal II, LLC, 849 F. Supp. 2d 586, 588 n.3 (D. Md. 2012)).

Accepting JHP's allegations as true, it has established Grilliards Inc.'s liability. The allegations demonstrate that JHP had the exclusive rights to distribute UFC 259 to businesses; Grilliards Inc. showed the event in Sonny's Billiards and Bistro without purchasing a license from JHP; and Grilliards could not have done so without unlawfully intercepting the programming. See Compl. at ¶¶ 8, 10-11, ECF No. 1. Courts in this district have granted default judgment under the same facts:

> Joe Hand has alleged facts that, when accepted as true, support liability under Section 605. Joe Hand alleges that it was granted the right to display the Broadcast via encrypted satellite signal on February 22, 2014, and that Defendants knowingly and intentionally intercepted its satellite transmission and displayed the program for its patrons to view. Joe Hand provides the affidavit of its auditor, Stoney Lee Shifflett, who was present at Club Infinity on February 22, 2014 and testifies that he observed Club Infinity airing the Broadcast on three television screens.

Joe Hand Promotions Inc. v. Harrison, NO. 2:14-cv-28688, 2016 WL 6988501, at *2 (S.D.W. Va. Nov. 28, 2016) (Johnston, J.) (internal citations omitted). Because JHP's allegations are

5

accepted as true and establish every element of a Section 605 violation, Grilliards Inc. is liable. The court turns to the personal liability of Brockman and Paitsel.

Under the statute, vicarious liability extends to the owners of a business where an individual defendant maintained the "'right and ability to supervise' the violations, as well as an obvious and direct financial interest in the misconduct." Adilio, No. 8:23-cv-00712-PX, 2024 WL 2977869, at *3. In this district, business owners and operators fit these criteria and may therefore be personally liable for violations of Section 605. See, e.g., Harrison, NO. 2:14-cv-28688, 2016 WL 6988501, at *2 (holding club owner jointly and severally liable for club's Section 605 violation) (citing Joe Hand Promotions, Inc. v. Phillips, No. 06 Civ. 3624(BSJ)(JCF), 2007 WL 2030285, at *3 (S.D.N.Y. July 16, 2007)).

According to the complaint, Brockman and Paitsel owned Grilliards Inc., which owned and operated Sonny's Billiards and Bistro. See Compl. at ¶¶ 5-6. Brockman and Paitsel also maintained and controlled Sonny's Billiards and Bistro. See id. Therefore, JHP alleges, both Brockman and Paitsel had the right and ability to supervise the business's activities and had a direct financial interest at stake. See id. Accordingly, Brockman and Paitsel are jointly and severally liable with

Grilliards Inc. for the Section 605 violation.  See Harrison, NO. 2:14-cv-28688, 2016 WL 6988501, at *2.

**B. Damages**

Section 605 allows aggrieved parties to recover either statutory or actual damages.  See 47 U.S.C. § 605(e)(3)(C)(i)(I)-(II).  In this case, JHP elects statutory damages.  See Compl. at 7, ECF No. 1.  The statute gives the court discretion to award between $1,000 and $10,000 for each violation.  See 47 U.S.C. § 605(e)(3)(C)(i)(II).  For willful violations committed for the purposes of direct or indirect commercial advantage or private financial gain, the court may increase the damages by as much as $100,000 per violation.  See id. at (e)(3)(C)(ii).

Courts employ one of three methods to determine damages under Section 605.  The first approach is to use a flat amount equal to the sublicense fee that was not paid.  See, e.g., J & J Sports Prods., Inc. v. Lara Sport House Corp., No. l:10-cv-01369, 2011 WL 4345114, at *6 (E.D. Va. Aug. 26, 2011).  The second is to use a per-patron rate, such as $100 per patron.  See, e.g., Joe Hand Promotions, Inc. v. Lawhon, No. 1:14cv459, 2016 WL 160730, at *2 (M.D.N.C. Jan. 13, 2016)).  Third, some courts award a flat sum, other than the sublicense fee, per violation.  See, e.g., J & J Sports Productions, Inc. v. J.R. 'Z

7

Neighborhood Sports Grille, No. 2:09-03141-DCN-RSC, 2010 WL 1838432, at *1 (D.S.C. Apr. 5, 2010).

JHP asks for a flat sum of $2,000.  See Mem. Supp. Mot. for Default J. at 8-9, ECF No. 18.  JHP argues that this award is warranted because actual damages are difficult to quantify and that "[g]iven the illegal benefits from the broadcast . . . and given the additional damages which [JHP] has suffered, it is fair and reasonable to assess . . . statutory damages in the amount of $2,000 . . . ."  Id. at 9.

The court agrees; a flat sum of $2,000 is appropriate.  It is difficult to quantify the harm caused to JHP, other than the $1,095 defendants would have had to pay to lawfully broadcast the event.  The court faced the same issue in Harrison, NO. 2:14-cv-28688, 2016 WL 6988501, at *1.  In that case, it would have cost the defendants $1,300 to license the broadcast from JHP, and the defendants advertised past unauthorized events on Facebook, indicating a pattern of piracy.  See id. at *3.  However, there was no evidence that they acquired "substantial monetary gain through [their] illegal activity . . . ."  See id.  Therefore, the court found that the $5,000 award was "just compensation."  See id.

This case is similar.  It would have cost the defendants only slightly less to purchase UFC 259 and their Facebook advertisements indicate that this was not their first offense.

8

However, there is not evidence of significant financial gain due to their unlawful activities. Therefore, the court finds that a flat sum of $2,000 is reasonable.

JHP also seeks enhanced damages of $10,000 under 47 U.S.C. § 605(e)(3)(C)(ii). See Mem. Supp. Mot. for Default J. at 12-13, ECF No. 18. As noted above, this requires defendants' violation to be willful and for financial gain. There is no question these elements are satisfied. JHP alleges that defendants could not have intercepted UFC 259 unintentionally, and defendants advertised and showed the event to increase business. See Compl. at ¶¶ 10-15, ECF No. 1. The question is what, if any, enhanced damages this behavior warrants.

Under Section 605, "[e]nhanced penalties often bear a relation to the amount of the statutory award." Harrison, NO. 2:14-cv-28688, 2016 WL 6988501, at *3. In most cases, courts award some multiple of the statutory damages. See id. Courts consider four factors in the calculation, including "(1) repeated violations over an extended period of time; (2) substantial unlawful monetary gains; (3) significant actual damages to plaintiff; (4) defendant's advertising for the intended broadcast of the event; and (5) defendant's charging a cover charge or charging premiums for food and drinks." Id. at *3 (quoting Joe Hand Promotions, Inc. v. Wing Spot Chicken & Waffles, Inc., 920 F. Supp. 2d 659, 667 (E.D. Va. 2013)).

9

In Harrison, the court considered these factors and found that two times the statutory damages, or $10,000 in that case, was appropriate. See id. at *4. The court found that the case presented no extraordinary factors warranting substantially enhanced damages. See id. The defendants had intercepted previous broadcasts before, as indicated by Facebook advertisements, but there was no evidence of substantial financial gain. See id. Therefore, the court found that a multiple of two times the statutory damages satisfied Section 605's objective of penalizing the defendants and deterring future violations. See id.

The court followed the same approach in a later case: "Consistent with the deterrence goals of § 605, and as a means of penalizing Defendants' repeated violations, the Court awards enhanced damages equal to two times the statutory damages . . . ." Joe Hand Promotions Inc. v. Nichols, NO. 2:14-cv-28727, 2017 WL 3216593, at *4 (S.D.W. Va. July 28, 2017) (Johnston, J.).

This court will apply the two-times multiple in this case as well, which results in enhanced damages of $4,000. Although this is less than the $10,000 requested by JHP, it adequately penalizes defendants, presents an adequate deterrence, and aligns with other decisions in this district. There are no distinguishing factors that warrant a more severe enhancement in

10

this case.  Defendants acted willfully, but there is no evidence of substantial financial gain.

In addition to damages, JHP seeks reimbursement of attorney fees and costs.  See Mem. Supp. Mot. for Default J. at 15, ECF No. 18.  Under Section 605, the court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails."  47 U.S.C. § 605(e)(3)(B)(iii).  JHP seeks $1,500 in attorney fees and $660 in litigation costs.  See Mem. Supp. Mot. for Default J. at 15, ECF No. 18.  JHP's submits an affidavit of its attorney, Zachary Eddy, in which he testifies that JHP's attorneys spent six hours on this case and that their ordinary rate is $250 an hour, for a total of $1,500 in attorney fees.  See ECF No. 17-3 at ¶ 8.  JHP also submits evidence that it cost $405 to file this action and $255 to serve the defendants with the complaint and summons.  See id. at ¶ 9.  The court finds these fees and costs reasonable and imposes them on defendants.

## IV. Conclusion

For these reasons, plaintiff's motion for default judgment (ECF No. 17) is **GRANTED**.  Defendants Grilliards Inc., Jonathan L. Brockman, and Robert Paitsel are jointly and severally liable to plaintiff for damages of $6,000, attorney fees of $1,500, and costs of $660, for a total of $8,160.

11

The Clerk is directed to send a copy of this Order to counsel of record and any unrepresented parties.

**IT IS SO ORDERED** this 29th day of October, 2024.

ENTER:

David A. Faber
Senior United States District Judge